RENDERED: AUGUST 26, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1473-WC

FRANCISCO RODARTE							APPELLANT


PETITION FOR REVIEW OF A DECISION
v.			OF THE WORKERS' COMPENSATION BOARD
				ACTION NO. WC-16-98428


BLUELINX CORPORATION;
HONORABLE DOUGLAS WAYNE
GOTT, ADMINISTRATIVE LAW
JUDGE; AND WORKERS'
COMPENSATION BOARD					APPELLEES

AND


NO. 2022-CA-0239-WC

BLUELINX CORPORATION						APPELLANT


PETITION FOR REVIEW OF A DECISION
v.			OF THE WORKERS' COMPENSATION BOARD
				ACTION NO. WC-18-64352


FRANCISCO RODARTE;
HONORABLE JOHNATHAN R.

WEATHERBY, ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD                                        APPELLEES


OPINION
AFFIRMING 2021-CA-1473-WC AND
REVERSING AND REMANDING 2022-CA-0239-WC

** ** ** ** **

BEFORE:  GOODWINE, MAZE, AND McNEILL, JUDGES.

GOODWINE, JUDGE:  Workers' compensation claimant failed to join a second

injury to a pending claim as required by KRS[1] 342.270 and, instead, filed a

separate claim.  This resulted in two appeals to the Workers' Compensation Board

("Board"), which yielded opposite results.  After careful review, we affirm the

Board in Claim No. WC-16-98428 and reverse and remand in Claim No. WC-18-

64352.

## BACKGROUND

While working for BlueLinx, Francisco Rodarte ("Rodarte") sustained

two separate injuries.  First, on January 5, 2016, Rodarte fell at work injuring his

right knee and left ankle.  Second, on August 13, 2018, Rodarte injured his right

shoulder while working, and he immediately began receiving temporary total

disability ("TTD") benefits from August 14, 2018, through September 14, 2020.

---

[1] Kentucky Revised Statutes.

-2-

On March 11, 2019, Rodarte filed a Form 101 for the 2016 knee injury, and the administrative law judge ("ALJ") approved a settlement agreement on October 7, 2019.  On December 4, 2020, Rodarte filed a Form 101 for the 2018 shoulder injury.  On June 8, 2021, Rodarte moved to continue the benefit review conference because he moved to reopen the 2016 claim to resolve the joinder issue.  BlueLinx objected to reopening the 2016 claim and continuing the 2018 claim.

The Board summarized the rest of the pertinent facts as follows:

On June 8, 2021, Rodarte filed a Motion to Continue the hearing setting forth the following:

A Motion to Reopen has been filed with the Department of Workers' Claims along with the initial Motion for Nunc Pro relief.

The Joinder issue, we may resolve itself under the 2016 claim.  If the hearing goes forward the ALJ will be required to issue a decision 60 days from the hearing.  If Plaintiff's Motion for Relief is still pending in the 2016-98428 claim this ALJ would be making a ruling based on facts that are subject to change.  No prejudice would be done to the parties if a delay occurs as Plaintiff is not receiving any benefits.

Plaintiff requests the hearing date be vacated and a scheduling conference between the ALJ and Counsel be scheduled.

On June 9, 2021, Bluelinx filed its response and Objection to Rodarte's Motion to Reopen in Claim No. 2016-98428.  For clarification purposes, Bluelinx noted that on June 4, 2021, Rodarte had served on the ALJ in

this claim a "Motion to Correct Error and Omission Nunc Pro Tunc of Form 110 dated 10/07/2019 and/or Alternatively Motion to Amend Form 110" in Claim No. 2016-98428. It noted that Rodarte had previously filed a Motion to Reopen Claim No. 2016-98428 accompanied by a Motion to Correct Error. Although it did not believe either motion was before the ALJ, out of an abundance of caution, Bluelinx represented it was filing a copy of its Response and Objection to Rodarte's Motion to Reopen in order to ensure the motion was not considered unopposed for purposes of this claim. As represented, attached to the Notice of Filing is Bluelinx's Response to Rodarte's Motion to Reopen Claim No. 2016-98428.

On June 10, 2021, Bluelinx filed a Response and Objection to the Motion for Continuance citing, in part, its Response and Objection to Rodarte's Motion to Reopen Claim No. 2016-98428 and asserting the holding in Ridge v. VMV Enterprises, Inc., 114 S.W.3d 845 (Ky. 2003) barred Rodarte's 2018 claim. On June 11, 2021, the ALJ overruled the Motion for Continuance of Hearing.

On June 15, 2021, Bluelinx filed its Response and Objection in Claim No. 2016-98428 to Rodarte's Motion to Void the Form 110 for mutual mistake of fact. Bluelinx again represented that because the ALJ had received Rodarte's motion in the previous claim, it was filing its response to Rodarte's motion. Bluelinx asserted it did not believe the motion was before the ALJ; however, out of an abundance of caution, it was filing a copy of its response in order to ensure Rodarte's motion in the previous claim was not considered unopposed for purposes of the pending claim.

At the June 16, 2021, hearing, the parties stipulated TTD benefits were paid from August 14, 2018, through September 14, 2020, for a total of $59,008.24. Notably, Bluelinx did not maintain TTD benefits were

-4-

not owed during this period. Rodarte's hearing testimony will not be summarized.

On August 13, 2021, the ALJ rendered an Opinion and Order noting among other things that the parties had stipulated the period during which TTD benefits were paid. The ALJ also discussed the medical evidence and the Form 110 approved by ALJ Case in the 2016 claim. The ALJ provided the following findings of fact and conclusions of law in support of the dismissal of the 2018 claim:

> . . .

> 11. The undisputed facts in this matter indicate the Plaintiff suffered an onset of pain while working for the Defendant on August 13, 2018, reported an injury, and received temporary total disability benefits as a result thereof.

> 12. It is also undisputed that the Plaintiff settled a prior claim against the same employer on October 7, 2019, for an injury that occurred in 2016.

> 13. The Kentucky Supreme Court, in Ridge v. VMV Enterprises, Inc., 114 S.W.3d 845, (Ky. 2003), said the language of KRS 342.270(1) is clear, unequivocal, and mandatory. Ridge involved almost identical facts including two sequential but different injuries suffered in the employ of the same defendant. The court reasoned that once a claim was made for the first injury, KRS 342.270(1) required him to join the claim for the second injury prior to settling the first. Id. at 847.

-5-

14. The Plaintiff has argued that the failure to join the instant claim was due to a mistake or in the alternative that the language barrier prevented his understanding of the joinder requirement.

15. The Plaintiff however testified he understood the origin of the temporary total disability and medical benefits he received due to the 2018 injury. Similarly, the Chief ALJ declined to reopen the 2016 claim based upon a failure to establish a prima facie case for mistake among other grounds.

16. The ALJ therefore finds the Plaintiff failed to join this cause of action as required by KRS 342.270(1), that the claim had accrued, and that he knew or should reasonably have known of the requirement due to his representation by competent, English-speaking, legal counsel.

17. The ALJ is therefore compelled to conclude that the Plaintiff's claim for a work-related right upper extremity injury occurring on August 13, 2018, is barred by KRS 342.270(1).

Bluelinx filed a Petition for Reconsideration noting certain errors and seeking clarification of the amount of Rodarte's average weekly wage ("AWW"). Rodarte did not file a Petition for Reconsideration. On August 25, 2021, the ALJ amended his finding regarding Rodarte's AWW and made other changes unrelated to the issue on appeal. The findings of facts and conclusions of law previously set forth remained unaltered.

Rodarte subsequently filed a Notice of Appeal.

On November 19, 2021, this Board affirmed the July 1, 2021, Opinion and Order of Hon. Douglas W. Gott, Chief Administrative Law Judge ("CALJ") overruling Rodarte's Motion to Reopen Claim No. 2016-98428 and the July 27, 2021, Order overruling his Petition for Reconsideration. The CALJ found Rodarte failed to make a *prima facie* case justifying reopening. On appeal to us, Rodarte argued the CALJ erred in denying the request to set aside or amend the settlement agreement which failed to include language preserving the claim for a subsequent injury known to Rodarte at the time of the settlement. . . .

Record ("R.") at 317-20.

In its opinion affirming the CALJ in the appeal of the 2016 claim, the

Board held:

On appeal, Rodarte argues the CALJ erred in denying the request to set aside the settlement agreement. Rodarte argues the parties were mistaken as to a material fact in settlement of the 2016 claim. Rodarte alleges he was mistaken in not including joinder language in the settlement when it was completed. He asserts BlueLinx was also mistaken after the Form 110 was completed and approved. The Form 110 approved by ALJ Case on October 7, 2019 closed the 2016 claim. BlueLinx continued to pay TTD and medical benefits in the 2018 claim for over 11 months post-settlement until he reached maximum medical improvement. It is clear BlueLinx was mistaken that the 2018 claim was still open and not subject to any limitations under the joinder statute and believed it had a legal duty to make these payments. Rodarte argues the CALJ erred in denying the *nunc pro tunc* motion to amend the contract to express the intent of the parties.

We begin by noting Rodarte identifies no mistake regarding the settlement agreement as it applies to the

-7-

2016 injury claim. There is nothing to indicate a mistake as to the amount, duration, or scope of the 2016 compensation. His alleged mistake concerns only the 2018 injury claim. The joinder provision in KRS 342.270 possibly acts as a bar to the 2018 claim, an issue to be addressed by the ALJ assigned to that case. The joinder provision has no effect on the 2016 claim. As such, there is no basis to reopen the 2016 injury claim.

Assuming *arguendo*, the joinder issue was properly before the ALJ in the 2016 claim. Rodarte filed no correspondence indicating the parties intended that the agreement contain language preserving the claim for the subsequent injury. To the contrary, he acknowledged, "At no point was the 2018 claim even discussed in settlement negotiations." If the parties never discussed the 2018 claim in the negotiations, there clearly was no meeting of the minds as to inclusion of language to preserve the 2018 claim in the settlement agreement for the 2016 claim. There is simply no evidence that prior to the settlement the parties agreed to preserve the 2018 injury claim. Additionally, we note payment of benefits in the 2018 claim after the settlement has no bearing on the 2016 claim.

The facts in the case *sub judice* are indistinguishable from Ridge v. VMV Enterprises, Inc., 114 S.W.3d 845 (Ky. 2003). There, the claimant, Ridge, sustained a work-related knee injury in 1998 and a work-related back injury in 1999. Ridge filed an application for benefits with respect to his knee injury on April 19, 2000. In August 2000, the parties agreed to settle the claim and the ALJ approved the settlement. The agreement made no reference to the back injury. On February 26, 2001, Ridge filed an application with respect to the back injury. The employer denied the claim and filed a special answer asserting the claim was barred by KRS 342.270(1). The ALJ agreed and dismissed the claim. In affirming the ALJ, the Supreme Court stated as follows:

-8-

The language of KRS 342.270(1) is clear, unequivocal, and mandatory, both with respect to a worker's obligation to join "all causes of action" against the employer during the pendency of a claim and with respect to the penalty for failing to do so. Under KRS 342.270(1), it is immaterial that the claimant's knee and back injuries arose at different times, involved separate claims, and were treated by the parties as separate matters. Once he filed a claim for the knee injury, KRS 342.270(1) required him to file and join the claim for the back injury before the knee injury claim was settled.

The CALJ properly determined reopening and/or the various motions filed by Rodarte were an improper attempt to use the 2016 injury claim to cure any perceived failure regarding the 2018 claim, and that any issues regarding joinder were properly before the ALJ in the 2018 claim. We conclude the CALJ correctly determined the proper forum for the litigation of the joinder question is in the 2018 injury claim.

R. at 326-28.

In the appeal of the 2018 claim, the parties made the following arguments:

On appeal, Rodarte argues that due to a mutual mistake of fact, the settlement agreement in Claim No. 2016-98428 did not include language joining the 2018 claim. He notes the litigation in Claim No. 2016-98428 is still pending. Rodarte contends the contract of settlement for the 2016 claim is no longer valid and does not provide a basis for the ALJ's ruling on the joinder issue. He also asserts the above-styled claim had not accrued at the time the claim for the 2016 injuries was

-9-

settled.  Rodarte posits that if the 2018 claim had been joined with the 2016 claim, it would have been placed in abeyance because he was still receiving TTD benefits and medical care.  Rodarte argues if the Board determines this claim had not accrued then he did not waive the claim.  Rodarte also asserts since English is his second language, he was limited in his ability to read, write, and understand English.  This is reflected at the final hearing in which he testified he did not understand he was waiving and "closing his right to the 2018 claim nor did he intend to do so."

Bluelinx counters that the Kentucky Supreme Court's holding in Ridge is controlling since there is no material fact as to whether the 2018 claim had accrued before the 2016 claim was settled.  It contends the language in KRS 342.270(1) is not subject to debate, because in Ridge the Supreme Court interpreted the joinder provision.  It contends the facts in Ridge are virtually identical to the case *sub judice*.  Bluelinx asserts since Rodarte failed to join the 2018 claim with the claim for the 2016 injuries during the pendency of the 2016 claim, this claim is barred by the holding in Ridge.

Bluelinx also maintains Rodarte's 2018 claim accrued before the 2016 claim was settled.  Although Rodarte began receiving TTD benefits for the 2018 injury when he was taken off work, Bluelinx contends he understood he was receiving TTD benefits and it was paying for medical treatment.  It notes that all of this occurred prior to Rodarte settling his claim for the 2016 injuries.  According to Bluelinx, even though Rodarte asserts his 2018 claim would have been placed in abeyance upon joinder with the 2016 claim, he cannot claim it would have been dismissed.  Bluelinx posits even though the claim would have been placed in abeyance, Rodarte still had a legally enforceable claim for medical and TTD benefits.  Since his 2018 claim was a legally enforceable claim and had accrued before the 2016 claim was settled on October 7, 2019, Bluelinx

argues KRS 342.270(1) bars Rodarte's claim for the 2018 injury.

R. at 328-29.

On February 4, 2022, the Board entered an opinion reversing and remanding the ALJ's opinion and order. The Board held KRS 342.270(1) did not bar Rodarte's claim for the 2018 shoulder injury. The Board determined the facts of the case were distinguishable from *Ridge*. The Board's opinion in the 2016 claim stated the facts of the case were indistinguishable from *Ridge*. The Board held that in *Ridge*, no TTD benefits were paid for the second injury after the claim for the first injury was filed. Here, BlueLinx began paying TTD benefits on August 14, 2018, the day after Rodarte's second injury, through September 14, 2020. The Board held Rodarte's 2018 claim had not accrued at the time the 2016 claim was settled because no clear impairment rating can be assessed prior to attaining maximum medical improvement ("MMI"). According to the Board's reasoning, Rodarte reached MMI one year after his second shoulder surgery on November 27, 2019, which was more than one month after the ALJ approved the settlement of the 2016 claim.

Rodarte petitioned for review of the 2016 claim (No. 2021-CA-1473-WC) on December 20, 2021. BlueLinx petitioned for review of the 2018 claim (No. 2022-CA-0239-WC) on March 7, 2022. BlueLinx moved to consolidate the appeals on March 29, 2022, and Rodarte did not respond. On April 15, 2022, this

-11-

Court entered an order granting the motion to consolidate the two appeals as long as they will be heard by the same three-Judge panel.

On appeal, in No. 2021-CA-1473-WC, Rodarte argues: (1) the Board erred in denying his request to void the settlement contract for mutual mistake of fact and (2) the ALJ erred in denying his *nunc pro tunc* motion.

On appeal, in No. 2022-CA-0239-WC, BlueLinx argues: (1) *Ridge* bars Rodarte's 2018 claim and (2) the 2018 claim accrued before the 2016 claim was settled.

## STANDARD OF REVIEW

Whether Rodarte's 2018 claim is barred for his failure to join it with his 2016 claim is a question of law. "[T]his Court is bound neither by the decisions of an ALJ or the Board regarding proper interpretation of the law or its application to the facts. In either case, the standard of review is *de novo.*" *Miller v. Go Hire Employment Dev., Inc.*, 473 S.W.3d 621, 629 (Ky. App. 2015) (citing *Bowerman v. Black Equip. Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009)).

## ANALYSIS

KRS 342.270(1) sets the statute of limitations and governs joinder of workers' compensation claims:

> If the parties fail to reach an agreement in regard to compensation under this chapter, either party may make written application for resolution of claim. The application must be filed within two (2) years after the

-12-

accident, or, in case of death, within two (2) years after the death, or within two (2) years after the cessation of voluntary payments, if any have been made. When the application is filed by the employee or during the pendency of that claim, he or she shall join all causes of action against the named employer which have accrued and which are known, or should reasonably be known, to him or her. Failure to join all accrued causes of action will result in such claims being barred under this chapter as waived by the employee.

In *Ridge*, 114 S.W.3d 845, the Supreme Court of Kentucky held a

workers' compensation claim was barred for failure to join it with a pending claim

under KRS 342.270(1). The facts of *Ridge* are similar to the facts at hand:

> In July[] 1998, the claimant sustained a work-related injury to his left knee. He returned to light-duty work, and on April 13, 1999, he sustained a work-related lower back injury. A November 3, 1999, letter from the employer's carrier to the claimant's attorney proposed that the parties settle the knee injury claim "and concentrate on the back claim." The claimant filed an application for benefits with respect to the knee injury on April 19, 2000. In August[] 2000, he and the employer agreed to settle the claim, and an ALJ approved their agreement. It made no reference to the back injury, and on February 26, 2001, the claimant filed an application for benefits with respect to that injury. He had not returned to work since the back injury and maintained that he could not do so until after he underwent a surgery that his physician proposed. The employer denied the claim and filed a special answer in which it asserted that the claim was barred by KRS 342.270(1).

*Id.* at 846.

-13-

There, the Board affirmed the ALJ's dismissal of the later back injury claim. Our Supreme Court held "KRS 342.270(1) is clear, unequivocal, and mandatory, both with respect to a worker's obligation to join 'all causes of action' against the employer during the pendency of a claim and with respect to the penalty for failing to do so." *Id.* at 847.

First, we address Rodarte's arguments that, in the 2016 claim, the Board erred in denying his request to void the settlement contract for mutual mistake of fact, and the ALJ erred in denying his *nunc pro tunc* motion. Below, the Board determined Rodarte identified no mistake about the settlement of the 2016 claim, and the only alleged mistake pertained to the 2018 injury. The 2018 claim was not joined with the 2016 claim, so the matter was not before the ALJ in the 2016 claim. As the joinder provision had no effect on the validity of 2016 claim, there was no basis to reopen it. Applying *Ridge*, the Board held the CALJ properly determined Rodarte improperly attempted to reopen the 2016 claim to cure his failure to join the 2018 claim, and the proper forum for the joinder issue was in the 2018 claim.

We agree with the Board that there was no mutual mistake for the ALJ to reopen the 2016 claim. KRS 342.270(1) requires the claimant to join all accrued causes of action. Otherwise, the statute deems the employee to have

-14-

waived the cause of action. The statute places no burden on the employer to ensure a claim for a subsequent injury is joined to a pending claim.

Additionally, the ALJ did not err in denying Rodarte's *nunc pro tunc* motion based on the same reasoning. Rodarte argues the omission of the 2018 injury from the 2016 settlement contract resulted from a clerical error where both parties neglected to include joinder language. Again, because the 2018 injury was not joined with the 2016 claim, the 2018 injury was not before the CALJ. Thus, the CALJ could not allow Rodarte to use the 2016 claim to cure Rodarte's failure to join the 2018 injury.

Second, we address BlueLinx's arguments that: (1) *Ridge* bars Rodarte's 2018 claim and (2) the 2018 claim accrued before the 2016 claim was settled. In response, Rodarte's one-page argument defers to the Board's analysis without making any other argument of his own.

In the 2018 claim, the Board reversed the ALJ's opinion and order finding KRS 342.270(1) barred his separate claim for the 2018 injury. The Board held the facts at hand were distinguishable from *Ridge* and determined Rodarte must not have joined the 2018 injury to the 2016 claim because he was receiving TTD benefits and was still recovering from the November 2018 surgery when the 2016 settlement contract was approved on October 7, 2019. The Board also determined that because Rodarte did not achieve MMI until after the second

-15-

surgery on November 27, 2019, his claim did not accrue until he reached MMI about a month after the settlement contract was approved.

In an unpublished opinion, *Wireman v. Bizzack, Inc.*, No. 2011-CA-001948-WC, 2012 WL 2483451 (Ky. App. Jun. 29, 2012),[2] this Court determined when a workers' compensation claim accrues based on *Roman Catholic Diocese of Covington v. Secter*, 966 S.W.2d 286 (Ky. App. 1998).  In *Secter*, this Court held: "Generally, a cause of action is said to accrue when the injury occurs.  However, in certain cases, a cause of action does not necessarily accrue when the injury occurs, but rather when the plaintiff first discovers the injury or should have reasonably discovered it."  *Id.* at 288 (citation omitted).  Based on *Secter*, we held in *Wireman* that a workers' compensation claim accrues when:  "(1) an employee suffers a traumatic event; (2) as a result of that event, he has a harmful change in his human organism; (3) he knows or should know that he has suffered that harmful change; and (4) the harmful change is verified by objective medical evidence."  *Wireman*, 2012 WL 2483451, at *2.

Here, on August 13, 2018, while Rodarte was working at the BlueLinx warehouse securing a load with a strap, he felt a pop in the front of his

---

[2] We cite this unpublished opinion as persuasive, not binding, authority.  *See* Kentucky Rules of Civil Procedure ("CR") 76.28(4)(c). Under CR 76.28(4)(c), unpublished opinions rendered after January 1, 2003, may be cited "if there is no published opinion that would adequately address the issue before the court."

right shoulder. He immediately could not continue working and reported the injury to his supervisor who took him to St. Elizabeth Business Health to see a doctor within a few hours of his injury. R. at 114-15. Rodarte informed the doctor he was injured at work, and the doctor immediately took him off work. R. at 115-16. Based on *Secter* and *Wireman*, Rodarte's claim accrued on the day he was injured and first saw a doctor for his injury.

The Board's determination that MMI must be reached for a claim to accrue is not based on any precedent. Rodarte's claim accrued when he first discovered the work-related injury, the day he was injured. Rodarte failed to join the 2018 shoulder injury to the 2016 claim before settling it on October 7, 2019. He could have joined the 2018 shoulder injury claim when he filed his first claim, but he did not file the claim for his 2016 knee injury until December 4, 2020. Based on our analysis, Rodarte's 2018 shoulder injury claim is barred and considered waived by his failure to join it to his 2016 knee injury claim under KRS 342.270(1) and *Ridge*.

The Board also conflates claim accrual and the statute of limitations. "A statute of limitations limits the time in which one may bring suit *after* the cause of action accrues[.]" *Coslow v. General Elec. Co.*, 877 S.W.2d 611, 612 (Ky. 1994) (emphasis added). As discussed above, Rodarte's claim for the 2018 shoulder injury accrued when he was injured. From that date, the limitations

-17-

period began to run and would have expired two years after the termination of the voluntary TTD payments under KRS 342.270(1). That Rodarte received TTD benefits for the 2018 shoulder injury is immaterial to the issue of claim accrual as making voluntary payments only tolls the statute of limitations and not the date of accrual. Thus, we hold the Board erred in determining the 2018 claim was not barred by KRS 342.270(1).

## CONCLUSION

For all these reasons, we affirm the Workers' Compensation Board's opinion in Claim No. WC-16-98428 and reverse and remand the Board's opinion in Claim No. WC-18-64352 with instructions to reinstate the Administrative Law Judge's opinion and order.

MCNEILL, JUDGE, CONCURS.

MAZE, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

MAZE, JUDGE, DISSENTING: I must respectfully disagree with the majority's conclusion that Rodarte's 2018 claim was barred because he failed to join it when he filed his 2016 claim. Rather, I agree with the Board that Rodarte could not have joined the 2018 claim to the 2016 claim because the former claim had not yet accrued at the time he filed the latter. Therefore, I agree with the Board that his 2018 claim was not barred.

As the majority correctly notes, the only question on appeal is whether KRS 342.270(1) required Rodarte to join his 2018 claim to his 2016 claim. In pertinent part, the statute provides:

> When the application is filed by the employee or during the pendency of that claim, he or she shall join all causes of action against the named employer which have accrued and which are known, or should reasonably be known, to him or her. Failure to join all accrued causes of action will result in such claims being barred under this chapter as waived by the employee.

As discussed by the majority, *Ridge v. VMV Enterprises, Inc.*, 114 S.W.3d 845, 846 (Ky. 2003), is the seminal case addressing the application of KRS 342.270(1). In that case, the claimant sustained a work-related injury to his knee in 1998. He returned to light-duty work but sustained a work-related lower back injury in 1999. The claimant and the employer agreed to settle the earlier knee injury later in 1999, following the lower-back injury. The claimant filed an application for benefits with respect to the knee injury on April 19, 2000, and the ALJ approved the parties' settlement agreement in August of that year. On February 26, 2001, the claimant filed an application for benefits for the lower-back injury. *Id.*

As in the current case, the question was whether the claimant was required to seek joinder of his lower-back injury claim at the time he filed the knee injury claim. The Kentucky Supreme Court held that:

-19-

> The language of KRS 342.270(1) is clear, unequivocal, and mandatory, both with respect to a worker's obligation to join "all causes of action" against the employer during the pendency of a claim and with respect to the penalty for failing to do so. Under KRS 342.270(1), it is immaterial that the claimant's knee and back injuries arose at different times, involved separate claims, and were treated by the parties as separate matters. Once he filed a claim for the knee injury, KRS 342.270(1) required him to file and join the claim for the back injury before the knee injury claim was settled.

*Id.* at 847.

Although the outcome of *Ridge* would appear to control the result the current case, subsequent cases have called that result in question. Most significantly, in *Saint Joseph Hospital v. Frye*, 415 S.W.3d 631 (Ky. 2013), the Kentucky Supreme Court noted the considerable confusion about the statute's use of the phrase, "all causes of action . . . which have *accrued and which are known*" *Id*. at 632 (emphasis added). In that case, the claimant suffered a work-related injury to her cervical and lumbar spine on January 3, 2008. She underwent medical treatment while continuing to work for the same employer until August 2009. A final hearing was held on the 2008 claim on April 9, 2009; an ALJ held a final hearing regarding that claim. Following the hearing, the ALJ set out a briefing schedule and stated that he would be taking the claim under submission on May 10, 2009, and the ALJ rendered an award of benefits on that claim on June 2, 2009. *Id.* at 632.

-20-

However, on April 23, 2009, after the final hearing in the 2008 claim but before the ALJ took that claim under submission or rendered an opinion, the claimant fell at work, allegedly suffering a second injury to her lumbar spine. She filed a claim related to the April 2009 accident on April 20, 2010, more than ten months after the ALJ rendered the opinion, order, and award related to her 2008 claim. The employer argued that the claim for benefits related to the 2009 fall was barred pursuant to KRS 342.270(1). The ALJ agreed and dismissed the claim, but the Board reversed, and this Court affirmed the Board. *Id.*

On further review, the Supreme Court affirmed the Board, focusing on the "accrued" language in KRS 342.270(1). The Court noted that there was no statutory mechanism to re-open the 2008 claim following the final hearing. Thus, the claimant could not have sought to re-open that claim to join the 2009 injury. Furthermore, it was a practical impossibility for the claimant Frye to file her second injury claim and join it to her first claim. Thus, the Supreme Court concluded that KRS 342.270(1) did not bar the claimant's 2010 claim. *Id.* at 635.

As addressed in the Board's opinion, this Court discussed the application of the "accrued" language in *Martin County Fiscal Court v. Simpkins*, No. 2014-CA-001863-WC, 2015 WL 4880356 (Ky. App. Jul. 24, 2015), concluding that KRS 342.270(1) did not bar Simpkins' claim for benefits in a subsequent claim. On July 12, 2010, Simpkins suffered skin damage caused by his

-21-

exposure to chemicals at work. He sought medical treatment and filed a claim against Martin County Fiscal Court ("Martin County"). On October 10, 2011, the ALJ in Simpkins' 2010 claim entered a hearing order noting the parties had settled the claim for a lump sum of $3,000.00 for a complete buy-out and dismissal of the claim. The agreement was formally approved by the ALJ on October 27, 2011.

On January 13, 2013, Simpkins filed a second workers' compensation claim for a back injury occurring on October 4, 2011, six days before the ALJ's entry of the hearing order denoting settlement of the 2010 claim. Martin County filed a motion to dismiss the 2013 claim on the grounds that KRS 342.270(1) required joinder of the claims. The ALJ did not rule on this motion but scheduled a benefit review conference ("BRC"). The parties submitted medical evidence following the BRC. The ALJ concluded Simpkins sustained a work-related lumbar injury meriting a 3% impairment rating. The ALJ held the joinder requirement of KRS 342.270(1) did not bar Simpkins' 2013 claim reasoning his injury did not accrue until after settlement of the 2010 claim, and joinder was not required. The Board affirmed and Martin County appealed.

This Court of Appeals affirmed the Board, focusing on the date that Simpkins' 2013 claim accrued.

> For clarification of this question, both the ALJ in his opinion and Simpkins in his brief relied upon an unpublished case from this Court, *Pepsi Cola General Bottlers, Inc. v. Butler*, 2007 WL 1964526, No. 2006-

CA-002401-WC (Ky. App. 2007). In that case, a separate panel of our Court employed KRS 342.270(1) and the same Chapter's definition of "injury" in holding that the claimant's cause of action for psychological injury did not accrue until the "claimant has suffered a 'harmful change in [his] human organism evidenced by objective medical findings' and he knows or should know that such harmful change is a 'direct result of a physical injury.'" *Id.* at *7, citing KRS 342.0011(1).

The undisputed objective of KRS 342.270(1) is "to address the problems created by the piecemeal litigation of workers' compensation claims. *Ridge*, 114 S.W.3d at 847, citing *Jeep Trucking, Inc. v. Howard*, 891 S.W.2d 78 (Ky. 1995). This objective is achieved through faithful application of the statute's mandatory language in conjunction with other statutes, including KRS 342.0011 and its definition of an "injury." Therefore, we reaffirm our holding in the [*Butler*] case, and we see no reason the same rule should not apply in Simpkins's case.

Whether it concerns joinder or the statute of limitations, the existence of an injury is but one criterion for determining when a workers' compensation claim "accrues." Of additional import is the question of when the claimant became aware that the injury was work-related. *Compare* [*Butler*] at *7, with *Alcan Foil Products v. Huff*, 2 S.W.3d 96 (Ky. 1999) (holding that workers' awareness of their work-related hearing loss and when that loss had ceased to worsen were key to a decision regarding the statute of limitations.); *see also* KRS 342.0011.

Looking to the facts in the present case, and applying the above criteria to the chronology of Simpkins's respective claims, we agree with the ALJ and the Board that KRS 342.270(1) did not compel joinder. Martin County argues that as of October 5, 2011, Simpkins had or should have had sufficient information to require joinder of his claims. It bases this assertion on

-23-

Simpkins's testimony that he reported his October 4 injury to his employer; that he told his doctor on October 5 that he had "done a lot of lifting[;]" and that Dr. Lafferty diagnosed an injury on that day. While these facts show the existence of an injury, they do not definitively demonstrate that Simpkins also knew or should have known that the injury was work-related. Rather, the record demonstrates that it was unclear on October 5, 2011, whether Simpkins's complaints stemmed from a new work-related injury or from aggravation of preexisting and possibly non-work-related back pain. This issue was not resolved until Dr. Lafferty concluded on January 3, 2013, that Simpkins's was a "job injury resulting in a low back injury[.]"

As the Board stated, in the five days between the injury and settlement of the 2010 claim, "[i]t was extremely difficult to determine whether Simpkins had a meritorious claim for a work-related injury[.]" Indeed, on October 10, 2011, when the 2010 claim was settled, the appropriate process for making such a determination had only just begun. To read KRS 342.207(1) as requiring Simpkins to immediately continue the settlement of the 2010 claim and seek joinder of an unconfirmed work-related claim is unreasonable, unduly burdensome, and beyond the intended function of KRS 342.270(1).

*Id.* at *2-3.

Based on the holdings of *Simpkins* and *Butler*, the Board in this case

concluded that the ALJ erred in finding KRS 342.270(1) mandates dismissal of the

2018 claim because joinder of the claims was required, reasoning as follows:

The facts in this claim are markedly different than in Ridge. In Ridge, the Supreme Court specifically noted there was no indication TTD benefits for the back injury were paid after the knee injury claim was filed. In the

-24-

case *sub judice*, there is no dispute that after the 2018 injury, Rodarte immediately began drawing TTD benefits and shortly thereafter underwent surgery on November 27, 2018. The undated Form 110 in the 2016 claim was approved by ALJ Case by order dated October 7, 2019. At that time, Rodarte had not filed a claim for the 2018 injury presumably because he was receiving TTD benefits and was still recovering from the November 2018 surgery. The parties' stipulation establishes that at the time the Form 110 was approved in Claim No. 2016-98428, Rodarte was still drawing TTD benefits. Further, he underwent another surgery one month after the settlement agreement in the 2016 claim was approved. Thus, at the time the settlement agreement was approved, Rodarte could not possibly ascertain the extent to which the first surgery remedied his shoulder problem, whether he would be impaired as a result of the injury, *i.e.*, the nature and extent of his injury, and whether the injury merited an impairment rating. Significantly, he underwent a second surgery which Bluelinx's evaluating physician, Dr. Walkiewicz, agreed was reasonable and necessary.[3] He opined as follows:

> Care seemed to be reasonable and necessary; however, the decision to perform a superior labral repair on a 51-year-old workers' compensation patient is somewhat questionable. He probably should have just had a biceps tenotomy with tenodesis right out of the gate. Nevertheless, it is difficult to predict what is going to happen with some of these work-related injuries. **Francisco Rodarte would be at maximum medical improvement 1 year after the surgery**

[3] Apparently, Dr. Walkiewicz was the second doctor Bluelinx employed to evaluate the successfulness of the first surgery. Dr. Walkiewicz's August 19, 2020, report reveals that based on his September 5, 2019, evaluation, Dr. Hassan felt there was a failure of the SLAP repair with biceps tendinopathy and recommended repeat revision surgery, arthroscopy, lysis of adhesions, biceps tenotomy with tenodesis. [Footnote in original.]

**date**.  He does not need any additional treatment, he should work on a home exercise program. (emphasis added).

As emphasized, Dr. Walkiewicz opined Rodarte would be at MMI one year after the surgery.  Assuming his opinion also applied to the November 27, 2018, injury, Rodarte at the time ALJ Case approved the settlement of the 2016 claim would not have been at MMI following the first shoulder surgery.  Rather, he would have attained MMI on November 27, 2019.

Rodarte's TTD benefits were terminated by Bluelinx on September 4, 2020, over eleven months after the parties settled Claim No. 2016-98428.  Based on a November 2, 2020, examination, Dr. Kay was the first doctor to offer an opinion concerning the existence of an impairment rating assessing a 24% impairment rating as a result of the 2018 injury.  Subsequently, on March 15, 2021, Dr. Heis, who performed the 2018 and 2019 right shoulder surgeries, assessed a 13% impairment rating.  In light of the above, we hold that at the time Claim No. 2016-98428 settled, Rodarte's claim had not accrued for purposes of KRS 342.270(1).  At the time of the settlement, assuming Dr. Walkiewicz would have assessed MMI one year after the first surgery, Rodarte would have attained MMI at least one month beyond the date ALJ Case approved the settlement on October 7, 2019.  Significantly, when ALJ Case approved the Form 110 in Claim No. 2016-98428, Rodarte was drawing TTD benefits.  The BRC Order reflects Bluelinx did not dispute Rodarte's entitlement to TTD benefits between August 14, 2018, and September 14, 2020.  Thus, Rodarte had met the statutory definition of temporary total disability and was entitled to TTD benefits during this period.  Just as important, as of October 7, 2019, none of the physicians could offer an opinion regarding the nature and extent of the injury and whether the 2018 injury generated an impairment rating pursuant to the [American Medical Association] AMA <u>Guides</u>, as the

-26-

AMA Guides are clear an impairment rating cannot be assessed prior to attainment of MMI.

The first impairment rating offered in the case *sub judice* was generated by Dr. Kay, who based on a November 2, 2020, examination assessed a 24% impairment rating. Consequently, at the earliest, Rodarte was aware he sustained a permanent injury at the time of Dr. Kay's report. Mostly [*sic*] importantly, at the time the 2016 claim settled the statute of limitations had not begun to run on Rodarte's claim as the limitation period began to run after September 14, 2020, when payment of TTD benefits ceased. Thus, his claim had not accrued at the time the settlement agreement in the 2016 claim was approved and KRS 342.270(1) is inapplicable.

Bluelinx would have us hold that in order for Rodarte's August 2018 claim to be viable, he was required to file a claim for the 2018 injury even though he was recovering from surgery, probably not at MMI, and could not be apprised of the nature and extent of his right shoulder injury. Further, in all likelihood, upon filing the claim for the 2018 injury, Rodarte's TTD benefits would have been terminated. According to Bluelinx, even though there was uncertainty as to the extent the first surgery was beneficial and whether Rodarte's 2018 right shoulder injury merited an impairment rating, he was required to file a claim for the 2018 injury. As claimed by Bluelinx, Rodarte was required to file a claim for the 2018 injury eleven months before the statute of limitations began to run on the claim. We reject that premise.

We conclude based on the qualifying language in Ridge, the Supreme Court's holding would have been different had Ridge been receiving TTD benefits for the last injury at the time the parties settled the earlier knee injury claim. As pointed out in Simpkins, supra, a separate panel in Butler, supra, had "employed KRS 342.270(1) and the same chapters definition of 'injury' in

holding that the claimant's cause of action for psychological injury did not accrue until the claimant has suffered a 'harmful change in [his] human organism evidenced by objective medical findings,' and he knows or should know that such harmful change is a 'direct result of a physical injury.'" [*Simpkins*, 2015 WL 4880356, at *2.] In the case *sub judice*, at the time of the settlement of the 2016 claim, none of the physicians had expressed an opinion as to whether Rodarte had suffered a harmful change to his right shoulder evidenced by objective medical findings. Rodarte was still recovering from the first surgery and had to undergo another surgery one month after the settlement was approved. Further, as stipulated, he was still receiving TTD benefits which meant he was not at MMI. Thus, pursuant to the AMA Guides, a physician could not offer an opinion that Rodarte had an impairment rating arising from the 2018 injury.

We emphasize one of the factors the Court of Appeals relied upon in determining KRS 342.270(1) was not applicable in Butler was the fact there was no evidence anyone had assigned a permanent impairment rating for Butler's complaints of depression and anxiety until after the reopening. Here, as in Butler, no physician offered an opinion as to whether Rodarte had an impairment rating at the time ALJ Case approved the settlement agreement in Claim No. 2016-98428 on October 7, 2019. As in Butler, even though there may have been a diagnosis of a shoulder injury, a diagnosis is not an objective medical finding and is not sufficient to establish a compensable injury. Because the physicians concluded Rodarte needed a second surgery, a mere diagnosis of a shoulder injury was not sufficient to establish a compensable injury as decreed by the Court of Appeals in Butler.

In summary, regardless of Rodarte's assertions contained in his Motion to Reopen the 2016 claim, the facts establish his 2018 claim had not accrued as of

October 7, 2019, when ALJ Case approved the settlement agreement in the 2016 claim. Of great significance is the fact the statute of limitations on Rodarte's 2018 claim had not begun to run when the claim was settled. The statute of limitations began to run on September 15, 2020, the day after voluntary payment of TTD benefits ceased. Consequently, Rodarte's claim for the 2018 injury had not accrued since the statute of limitations had not begun to run on his 2018 claim when ALJ Case approved the settlement agreement in the 2016 claim on October 7, 2019. We adopt the Court of Appeals' logic in Simpkins and hold that to read KRS 342.270(1) requires Rodarte to immediately continue the settlement of the 2016 claim, file a claim which was not ripe for litigation, "and seek joinder of an unconfirmed work-related claim is unreasonable, unduly burdensome, and beyond the intended function of KRS 342.270(1)." [*Simpkins*, 2015 WL 4880356, at *3.]

Although *Simpkins* is an unpublished case, I believe that it persuasively distinguishes Rodarte's situation from the facts in *Ridge*. The holdings in *Simpkins* and *Butler* are further bolstered by the published decision in *Frye*. The majority suggests that there is no precedent for the conclusion that MMI must be reached for a claim to accrue. But these cases make it clear that joinder is not required simply because a subsequent injury occurs while a prior injury claim is pending, or even before the prior injury claim is formally filed.

Moreover, the scope of this Court's review "is to correct the Board only where the [] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685,

687-88 (Ky. 1992). Given the conflicting case law on this subject, I cannot say that the Board has clearly overlooked or misconstrued controlling statutes or precedent. At the very least, I believe that the Supreme Court should clarify the applicability of KRS 342.270(1) in circumstances such as this. Consequently, I would affirm the Board's holding in this matter.

BRIEFS FOR FRANCISCO
RODARTE:

Michael L. Weber
Cincinnati, Ohio

BRIEFS FOR BLUELINX
CORPORATION:

Douglas P. Dawson
Louisville, Kentucky